## MAIN TP. SCHOOL D. v. C. REICHARD ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF COLUMBIA COUNTY.

Argued April 16, 1891—Decided May 4, 1891.

(*a*) In 1822, land was conveyed to the "trustees of union meeting and school house," and their successors, "in trust, nevertheless, to and for the use, benefit and behoof of the said meeting and school house, forever;" and, for many years thereafter, religious worship and subscription schools were conducted in buildings thereon.

(*b*) After the adoption of the common-school system of Pennsylvania, a school district occupied one of the buildings for common-school purposes, and in 1871, with the knowledge of the church societies, erected a new school building, which, in 1889, after notice to the school district, was removed by the landowners:

1. In trespass by the school district for the removal of the school building, the undisputed evidence showing that the erection of the building by the school district, and the use made of it, were permissive merely, insufficient to give title by irrevocable license, it was not error to direct a verdict for the defendants.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 368 January Term 1891, Sup. Ct.; court below, No. 256 September Term 1889, C. P

On September 16, 1889, the School District of Main township brought trespass against Charles Reichard and seven others, filing a statement of claim that the defendants had broken and entered the plaintiff's close, and had torn down and removed the plaintiff's schoolhouse erected thereon.  Issue.

At the trial, on February 11, 1891, the case shown was in substance as follows:

On September 30, 1822, the Reformed and Lutheran congregations, by written articles, united in building a union meeting- and schoolhouse, upon an acre of ground purchased from Henry Fisher.  On November 4, 1822, by deed of that date, between Henry Fisher and wife, grantors, of the one part, and John Fisher and others, "trustees of union meeting and school house," of the other part, grantees, the grantors, in consideration of twenty dollars, conveyed the one acre of ground to the "trustees and their successors, in trust for the use, benefit and behoof of the said union meeting and school house forever, . . . . to have and to hold the same unto the said trustees and their successors, forever." From 1822 to 1832, the two congregations occupied the building for church services on alternate Sundays.  The old style "subscription" schools were held therein on week days.  In 1833, a separate church building was put up.  From the organization of the school district under the common-school law, the old building remaining was used permissively by the school district, and in 1871, the school district, with the knowledge of the church societies, removed

Charge of Court below.

the old school building and erected a new one in its stead.   In 1887, the union between the two congregations was dissolved; and, by deed of November 28th of that year, the Lutheran congregation conveyed its interest in the land to the Reformed congregation.   On May 12, 1889, the latter, after refusing to make title to the school district, served notices upon it to remove its school building.   The notices not being complied with, the defendants, in September 1889, removed the building themselves.

At the close of the testimony, the court, BUCHER, P. J. 20th district, specially presiding, charged the jury in part as follows:

The plaintiff, to sustain the allegation on its part, gave in evidence a deed, venerable with age, dated as early as the fourth day of November, 1822, by which conveyance one Henry Fisher and his wife conveyed to John Fisher, Conrad Bredbenner, Benjamin Reinboldt, John Klingerman, Jacob Gearhart and John Nuss, trustees of union meeting and schoolhouse, one acre of ground in Mifflin township, this county, to have and to hold all the said land unto the said trustees and their successors forever, in trust nevertheless as a union meeting and schoolhouse.

It occurred to me at the time of the offering of this deed that this was a charity; and that it was necessary to permit the plaintiff to give evidence, in order to see accurately who were the beneficiaries under this deed.

[You will understand me: The deed names trustees, and it is silent as to who were the beneficiaries or the people to be represented by these trustees.   We permitted the plaintiff to give evidence that at a very early day, before the public school system of our state was created, there was an old log tenement upon this property; that the people in the neighborhood maintained a school there by subscription, as it was called; that this old log schoolhouse was the place to which the children of the people of the neighborhood were sent to be educated, until it became worn out, and that then a new building was erected upon this disputed one acre of ground,—not, indeed, upon precisely the same foundation with the former one which it superseded, but seventeen feet remote, at one corner from where the

original building had stood; that this building, in its turn, became insufficient for the purpose; that, finally, in 1871 or 1872, this plaintiff school district erected the structure which the defendants removed.] [2]

[This was the evidence on the part of the plaintiff. You must have observed that this evidence does not disclose the legal title to this disputed acre as being in this plaintiff school district. By the conveyance, as we have told you before, the title was lodged in the trustees. The evidence offered by the plaintiff was insufficient, as Mr. Rhawn, one of the learned counsel for the plaintiff, very well admits, to establish a title by adverse possession under what is commonly called by lawyers the statute of limitations ; the reason being that there was not that continued, uninterrupted, visible, notorious, distinct and hostile possession required by the statute in order to confer title in that way. The plaintiff closed its case by giving the line of testimony such as we have indicated. The evidence of the plaintiff disclosed that the churches had possession, too, for schools.] [2]

The defendants then developed their title. They called witnesses to show who the beneficiaries were that are mentioned in the conveyance of November 4, 1822, from Henry Fisher to these trustees, as "the union meeting and school house." [This evidence undeniably establishes what was meant by the term "union meeting and school house." The uncontradicted evidence in the case is that the beneficiaries in this deed mentioned are the German Reformed and the Lutheran congregations, who worshiped in that portion of the township, in that neighborhood; they were the beneficiaries in the deed, and not all the people in the neighborhood. The fact is unquestioned that, before they erected their church building in 1833, these congregations, under the form of a "union church," as they then existed all through the German sections of the commonwealth, and as they exist in some localities within the state to-day, were the legal beneficiaries under this conveyance,—the persons for whose benefit and use these trustees under the Fisher deed held the legal title to this disputed acre of ground. It is in evidence that in 1833 they built a union church on the north side of the lot, or across the road from this old log schoolhouse, and that during all these years they exercised dominion

and control over this schoolhouse property for church and school purposes.] [3] We do not know, according to my recollections of the evidence, the exact date when that old log building was pulled down and the new plank structure described by the witnesses was put up in its place; but we do know, and the evidence is clear and undenied, that in 1871 or 1872 this school district plaintiff did erect the new schoolhouse in question upon this disputed acre of ground, and the evidence is also clear that it was erected and paid for out of the school funds. The learned counsel for the plaintiff ask me to say that, if you believe these facts, they constitute such a license on the part of the trustees as would extinguish their legal title to this acre of ground, and would place it beyond the power of the beneficiaries under the deed to revoke the license.

The law wisely provides that when one man desires to acquire from another title to real estate, he shall do it by a writing duly signed, sealed and delivered, and not by parol. This is a salutary provision of the law, and the general rule is that no man can acquire title to real property held by another, unless that other gives him the right by a writing duly executed. While this is true, there are certain exceptions. An easement or a license in land may lie, and often does lie, in grant, as well as in parol. The statute of frauds and perjuries declares that the instruments of ownership of real property must be in writing; yet, the object of the statute in making that requirement being to prevent the perpetration of fraud, the law in its wisdom provides that when one man has, by word of mouth or by verbal agreement entered into with his neighbor, induced that neighbor to part with his money or other valuable thing upon the faith of that promise or agreement, the bargain will be enforced notwithstanding the statute of frauds and perjuries. If the law failed to do that, it would bring about the very result which the statute of frauds and perjuries was intended to prevent.

Let me illustrate: . . . . . So here. If the evidence in this case disclosed fairly and clearly that, before this school district expended a dollar in the erection and construction of this schoolhouse, they had consulted with the trustees named in the Fisher deed, or with their successors in office, and had

Charge of Court below.

obtained their consent to the expenditure of money in the erection and putting up of a schoolhouse on this disputed land, and had then proceeded to erect the building, then neither the present trustees nor the beneficiaries under the deed could revoke such license. [But, so far as this evidence goes, as I understand it, it discloses no more than this : that, whilst these churches were the owners of this land, they simply did not interfere to prevent these people, the plaintiff, from going upon their land and putting up a house. I charge you that the burden of proof is upon the party who claims under a license to satisfy the conscience of the jury clearly and plainly by the weight of the evidence that he had such license.] [4] The claim of the defendants in the present case is that there is no such evidence. On the contrary, we have evidence that whilst this occupation was going on, on the part of the school district, they acknowledged they had no title. One of the witnesses, himself a school director at the time, says that as early as 1858 or 1859 they were trying to get title to this property ; that they went to a certain justice of the peace, who was also a surveyor and a scrivener, to get him to make a deed, and that the justice said he could not make a deed because he had not the metes and bounds. In 1871 or 1872, according to the evidence of Fetterolf, a member of the board that built the schoolhouse in question, before they built it was appointed as a representative of the school board to consult the successors of the trustees or the officers of the beneficiary congregations under this Fisher deed, in order to obtain title to this acre ; and he says that they refused to give title, that he reported their refusal to the board and that the board nevertheless went on and did erect this schoolhouse. Under this evidence, the court would not be justified in charging you that simply because the trustees under this deed knew or might have known the fact that the plaintiff was building on their land, and did not interfere nor interrupt the work, this was equivalent to granting the plaintiff an irrevocable license. Such is not the law; at best it could amount to no more than a license at will.

[I charge you that under this evidence as submitted by the plaintiff and by the defendants, the plaintiff has failed to make out a case ; and therefore you should render your verdict in favor of these defendants. The whole evidence shows that

Arguments.

the Fisher deed was not a charity, but that the land was bought and fully paid for by the trustees.] [1]

—The jury returned a verdict for the defendants, as directed. Judgment having been entered, the plaintiff took this appeal, assigning for error:

1–4. The portions of the charge embraced in [ ] [1 to 4]

*Mr. W. H. Rhawn* and *Mr. B. F. Zarr* (with them *Mr. G. S. Herring*), for the appellant.

Counsel cited: (1) Sch. Dir. v. Dunkleberger, 6 Pa. 29; 2 Washb. on R. P., 4th ed., § 446; 1 Lead. C., Am. Law of R. P., 153; Cook v. Trimble, 9 W. 15; Robinson v. Railroad Co., 59 Vt. 42. (2) Potts v. Sch. Dir., 42 Pa. 132; Klinkener v. Sch. Dir., 11 Pa. 448; Wright v. Linn, 9 Pa. 433; Follmer's App., 37 Pa. 121; Hagerty v. Albright, 52 Pa. 274; Syphers v. Meighen, 22 Pa. 125; Carter v. Fishing Co., 77 Pa. 310; Chew v. Morton, 10 W. 321; Lehigh Coal Co. v. Harlan, 27 Pa. 429; Pratt v. Campbell, 24 Pa. 184. (3) Washburn on Easements, 3d ed., 186; Brendle v. Church, 33 Pa. 415; Griffin's App., 109 Pa. 150; Garrett v. Jackson, 20 Pa. 335; Cincinnati v. White, 6 Pet. 438, 440; Dillon on Mun. Corp., 2d ed., § 501; Crockett v. Robinson, 5 Cush. 182; Baker v. Johnston, 21 Mich. 319. (4) McLain v. Sch. Dir., 51 Pa. 196; Beaver v. Filson, 8 Pa. 327; Martin v. McCord, 5 W. 495; Cumberland V. R. Co. v. McLanahan, 59 Pa. 23; Thompson v. McElarney, 82 Pa. 174; McKellip v. McIlhenny, 4 W. 312; Swartz v. Swartz, 4 Pa. 353; Lacy v. Arnett, 33 Pa. 169; Wheatley v. Chrisman, 24 Pa. 298; Read v. Goodyear, 17 S. & R. 350.

*Mr. H. M. Hinckley* (with him *Mr. C. E. Geyer* and *Mr. John G. Freeze*), for the appellees.

Counsel, distinguishing Kirk v. King, 3 Pa. 436, and Wright v. Linn, 9 Pa. 433, cited: Perry on Trusts, §§ 520, 687; Weiss v. South Bethlehem Bor., 136 Pa. 305; Martin v. Knapp, 57 Ia. 336; Curtis v. Keesler, 14 Barb. 511; Grogan v. Haynard, 4 Fed. R. 161; Morrison v. Marquardt, 24 Ia. 35 (92 Am. Dec. 444); Goddard's Law of Easements, 182; Niagara Falls Co. v. Bachman, 66 N. Y. 261; Gowen v. Phila. Exch. Co., 5 W. & S. 142; Griffin's App., 109 Pa. 153; Ege v. Medlar, 82 Pa. 99;

Syllabus.

Hole v. Rittenhouse, 25 Pa. 493 ; De Haven v. Landell, 31 Pa. 126 ; Read v. Thompson, 5 Pa. 330; Landis's App., 102 Pa. 473.

PER CURIAM:

We do not think the learned judge below erred in giving a binding instruction. He was asked to do so by both parties. Moreover, the case was properly withdrawn from the jury. The school district, plaintiff, had not proved any title to the property in dispute. The use that had been made of it was permissive merely. The one acre of ground was conveyed by Henry Fisher on November 4, 1822, in consideration of twenty dollars, to John Fisher et al., " trustees of union meeting and school house, and to their successors forever, in trust, nevertheless, to and for the use, benefit, and behoof of the said meeting and school house." The school district was not named in the deed as a beneficiary, nor was there evidence aliunde to show that it was intended as a beneficiary. Indeed, at that time there was no such school district, nor for many years afterward. Such use as the district made of the schoolhouse was, as before observed, permissive merely. So far from having any title to any portion of this one acre, the school district applied to the trustees in 1859, and again in 1871, to give them a title, and in each instance was refused.

Judgment affirmed.